UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

CIVIL ACTION NO. 09-CV-9-HRW

CHARLES W. BLACKBURN                                                                              PETITIONER

v.                              **MEMORANDUM OPINION AND ORDER**

E.K. CAULEY, *Warden*                                                                              RESPONDENT

Charles W. Blackburn is incarcerated in the Federal Correctional Institution located in Ashland, Kentucky ("FCI-Ashland"). Blackburn has submitted a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and has named E.K. Cauley, the Warden of FCI-Ashland, as the respondent in this action. Blackburn has paid the $5.00 filing fee.

This matter is before the Court for screening. 28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002). As Blackburn is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, if the Court determines that the petition fails to establish adequate grounds for relief, it may dismiss the petition or make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

CLAIMS

Blackburn complains that the BOP has improperly established and imposed against him a payment schedule pursuant to the Inmate Financial Responsibility Program ("IFRP"), 28 C.F.R.

§ 545.10-545.11. Blackburn challenges the validity of the IFRP, its application to him, and its effect on the execution of the portion of his criminal sentence requiring him to pay a fine. The Bureau of Prisons ("BOP") implemented the IFRP in 1987 to encourage federal inmates to meet their "legitimate financial obligations." 28 C.F.R. § 545.10.

Blackburn alleges that the BOP's implementation of the IFPR program is not voluntary because if he refuses to participate, he does so at the risk of losing many privileges. He asserts that the BOP uses "coercive" tactics to force him to participate in IFRP, and that the collection of 50% of his earnings from his UNICOR prison job constitutes a "taking" of property. He contends that the BOP's action in this respect violates his right to due process of law, guaranteed under the Fifth Amendment of the United States Constitution.

## ALLEGATIONS OF THE PETITION

Blackburn did not attach a copy of his criminal judgment, but he states that he was convicted of bank robbery in the United States District Court for the District of Indiana and, on April 10, 1992, received a 425-month sentence.[1] He states that as part of his criminal judgment, he was ordered to pay restitution in the amount of $23,996.00 to the Fifth Third Bank of Indianapolis, Indiana and $5,578.00 to the American Bank of Indianapolis, Indiana [Record No. 2, p.1].

Blackburn states that his criminal judgment ordered restitution to be paid "in full immediately" [*Id.*]. He further contends that his criminal judgment did not impose a restitution

---

[1] Due to the age of the conviction (1992), this Court can not electronically access Blackburn's criminal judgment through use of the Public Access to Court Electronic Records ("PACER")website

payment schedule of any kind, and that it did not impose on him an obligation to make restitution payments while he was incarcerated by way of the IFRP [*Id*., p. 2]. Specifically, Blackburn takes issue with the fact that prison officials at FCI-Ashland have appropriated 50% of his earnings from his UNICOR job to satisfy his restitution obligations [*Id*., p.2, ¶ 10]. According to Blackburn, the BOP's collection of money from him, though the IFRP, has been accomplished through "threats of punishment and sanctions," by "intimidation," and by "coercion" [*Id*., ¶ 8].

Blackburn states that he entered into an IFRP contract with the BOP "under their "'threats' of sanction and punishment if he did not do so." [*Id*., ¶ 9]. Blackburn reiterated in his § 2241 petition that the BOP's collection of 50% of his UNICOR prison job earnings is not authorized by the terms of his criminal judgment [*Id*., p.4].

## RELIEF REQUESTED

Blackburn seeks an Order requiring the BOP to remove him from participation in the IFRP (presumably without loss of any privileges). He also asks the Court to order the BOP to refund him with all monies the BOP has appropriated from his UNICOR prison job earnings which have been used to satisfy his restitution obligations [Record No, 2, pp. 4-5]

## DISCUSSION
### 1. Exhaustion Results

Petitioner has fully exhausted his objections regarding the IFRP payment schedule. On September 10, 2008, Warden Cauley denied the petitioner's BP-9 appeal, stating as follows:

> You entered into the Financial Responsibility Program on June 12, 1992, and agreed to pay $25 each quarter or 50% of your UNICOR pay. You read and signed this financial plan agreement. The amount of your payments and total owed on this fine was calculated as reflected in your Judgement in a Criminal Case. The court ordered the collection of the fine immediately and not      after you

3

are released from custody. Under Program Statement 5380,08, <u>Financial Responsibility Program</u>, "The Bureau of Prisons encourages each sentenced inmate to meet his or her legitimate financial obligations. As part of the initial classification process, staff will assist the inmate in developing a financial plan for meeting those obligations, and at subsequent program reviews, staff shall consider the inmate's efforts to fulfill those obligations as indicative of that individual's acceptance and demonstrated level of responsibility. The provisions of this rule apply to all inmates in federal facilities, except: Study and observation cases, pretrial detainees, and inmates in holdover status pending designation. The Bureau of Prisons encourages each sentenced to meet his or her legitimate financial obligations."

**An inmate may refuse to participate in the Financial Responsibility Program or to comply with their financial plan. When this occurs it will ordinarily result in the following, If applicable, the parole commission will be notified and the inmate will be not be considered for a furlough. The inmate will receive performance pay only and will not and can not be assigned to an outside work detail. They will not be allowed to work in UNICOR and their commissary spending will be limited. The inmate will be quartered in the lowest housing status and will not receive a release gratuity or receive an incentive for the residential drug treatment program. You are encouraged to participate in the financial responsibility program and meet your court ordered financial obligation**.

Based on this information, your request for relief is denied. If you are dissatisfied with this response, you may appeal to the Regional Director. . . .

[Record No. 4-2, pp.8-11](emphasis added).

On October 2, 2008, K. M. White, Regional Director of the BOP's Mid-Atlantic Regional Office, denied Blackburn's BP-10 appeal for the same reasons. White noted that the Petitioner has court-ordered obligations, and that although participation in the IFRP is voluntary, refusal to participate would subject the petitioner to adverse consequences [Record No. 4-2, p.6].[2]

---

[2]

Director White explained the reason for the denial as follows:

A review of your Judgment In A Criminal Case indicates you were ordered to pay a $200.00 Special Assessment and a $29,574.00 Restitution obligation which are due

Finally, on February 9, 2009, Harrell Watts, the National Inmate Appeals Administrator, rejected the petitioner's BP-11 appeal. Watts upheld the prior decisions of both Warden Cauley and K. M. White on the issue of applying an IFRP payment schedule to Blackburn, and the consequences of his decision not to participate [Record No. 4-2, p.11].

> Although IFRP is a voluntary program, encouraging payment of court-ordered financial obligations is consistent with promoting the responsibility of inmates. Inmates who choose not to participate in the program demonstrate poor responsibility and are held accountable for their inactions. The refusal of an inmate to participate in the IFRP or to comply with the provisions of his financial plan ordinarily shall result in the withholding of certain privileges. We find no reason to depart from the decision made at the institution level.

[*Id*.].

## 2. Analysis of the Claim on the Merits
### A. IFRP Was Properly Applied to Blackburn

Blackburn argues that the BOP does not have authority to set payment amounts and require that they be made toward his restitution obligation through the IFRP. He also contends that he should be allowed to withdraw from the IFRP without suffering any loss of privileges or benefits which can only come from participation in the IFRP. The Court rejects both arguments.

As for Petitioner's first claim, the Court notes that some cases, relying on 18 U.S.C.

---

immediately. Pursuant to Bureau of Prisons policy, Program Statement 5380.08, Financial Responsibility Program, Inmate, as a participant in the IFRP Program, your Unit Team will assist you in developing a financial plan for meeting your financial obligations commensurate with your ability to pay. Although IFRP is a voluntary program, encouraging payment of court-ordered financial obligations is consistent with promoting the responsibility of inmates. Inmates who choose not to participate in the program demonstrate poor responsibility and are held accountable for their inactions. The refusal of an inmate to participate in the IFRP or to comply with the provisions of his financial plan ordinarily shall result in the withholding of certain privileges. We find no reason to depart from the decision made at the institution level.

§3572(d), have reversed the delegation of authority to the BOP to establish the amount and timing of fines or restitution, *United States v. Coates*, 178 F.3d 681, 684-85 (3rd Cir. 1999); *United States v. Workman*, 110 F.3d 915, 918 (2d Cir. 1997), *cert. denied*, 520 U.S. 1281 (1997); *United States v. Miller*, 77 F.3d 71, 78 (4th Cir. 1996).

The Sixth Circuit Court of Appeals has specifically declined to adopt this rationale. *Weinberger v. United States*, 268 F.3d 346, 360 (6th Cir. 2001). Moreover, the cases from the other jurisdictions are distinguishable because in the instant proceeding, the plaintiff does not allege that his sentencing judge delegated the responsibility of setting a collection schedule to anyone. He alleges only that the trial court set the amount of restitution, which he states was to be paid only after release from custody.

In his § 2241 petition, Blackburn states that the sentencing court ordered his restitution to be paid "immediately." According to the administrative exhaustion documents filed in this record, the BOP interpreted the restitution obligation in the same manner. The BOP explained that Blackburn *agreed* to participate in the IFRP in 1992. The Court determines that given these circumstances, and the weight of the applicable case law, Blackburn's claim lacks merit.

An instructive case is *United States v. Walker*, 2005 WL 2007006 (3rd Cir. 2005). In *Walker*, the Third Circuit noted that the judgment did not direct the BOP to determine a repayment schedule, but instead directed that the entire amount of the restitution ordered was "due in full immediately." The Third Circuit distinguished between the legal **obligation** to repay the amount owed and the efforts subsequently undertaken by the BOP to actually **collect** the amount owed through the IFRP:

6

> Because such an order for immediate payment does not impermissibly delegate judicial authority, it is permissible for the BOP to administer collection through the IFRP. As the Court of Appeals found in *McGhee*, there is simply no conflict between a restitution order directing immediate payment and the BOP initiating an IFRP payment plan.

*Walker*, 2005 WL at \*\*1 (*citing McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999)).

The Eleventh Circuit reached the same result under similar facts:

> The district court's sentencing order stated that West was to pay a special monetary assessment of $2000 and restitution in the amount of $25,517,666.46, both due "immediately." The order noted that the penalties "shall be due during the period of imprisonment," and payment of the assessment and restitution made while West was incarcerated would be made through the IFRP, with the remaining balance to be paid in monthly installments of not less than $500 during his supervised release to begin three months after his release.
> . . . . .
>
> here, the district court ordered immediate payment of restitution and provided the manner and schedule in which it was to be paid: both while West was incarcerated and when he was released. See 18 U.S.C. § 3664(f)(2) (the court shall specify in the restitution order "the manner in which, and the schedule according to which, the restitution is to be paid"). Thus, the district court did not improperly delegate its duties to the BOP.

*West v. Zenk*, 2008 WL 1934458, \*\*1 (11th Cir. 2008); *see also United States v. Sawyer*, 521 F.3d 792 (7th Cir. 2008) ("leaving payment during imprisonment to the Inmate Financial Responsibility Program is not an error at all, let alone a plain error. The statute requires the judge to set a schedule if the Defendant cannot pay in full at once, see 18 U.S.C. § 3664(f)(2), but it does not say when the schedule must begin. We hold today that it need not, and as a rule should not, begin until after the defendant's release from prison. Payments until release should be handled through the Inmate Financial Responsibility Program rather than the court's auspices.")

Thus, there is nothing in the record to suggest that there was an improper delegation to the BOP. *See McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1998) (holding that the BOP can administer collection through the IFRP where a sentencing court orders fine and special assessment due "in full immediately"). *See also Hudson v. True*, 1999 WL 1285832 (D. Kan. December 23, 1999) (Only Westlaw citation currently available) ("There is no improper delegation of authority shown by this record and even if there were, it would not be actionable in this §2241 petition."); *Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir. 2002) ("The immediate payment directive is generally interpreted to require "'payment to the extent that the Defendant can make it in good faith, beginning immediately.'" *McGhee*, 166 F.3d at 886 (*quoting United States v. Jaroszenko*, 92 F.3d 486, 492 (7th Cir. 1996)). We therefore hold that it is within the BOP's discretion to place appellants in the IFRP payment plan."). Blackburn's claim therefore fails on the merits.

## B. IFRP "Refusal" Consequences are Valid

As for Blackburn's second argument that refusal to participate in the IFRP is not truly voluntary, and that it is in effect coercive participation, the Court flatly rejects that argument as invalid. In *Johnpoll v. Thornburgh*, 898 F.2d 849, 850-51 (2d Cir.), *cert denied*, 498 U.S. 819 (1990), the IFRP was upheld because it "serves a valid penological objective of rehabilitation by facilitating repayment of debts," and "is fully consistent with the Bureau of Prisons' authorization, under direction of the Attorney General, to provide for rehabilitation and reformation."

The *Johnpoll* court further concluded that participation in the program is neither punitive

in nature nor violative of due process because it is "reasonably related" to the legitimate governmental objective of rehabilitation. *Johnpoll*, 898 F.2d at 851.

General and constitutional challenges to the IFRP have been rejected by other courts as well, the courts having ruled that the IFRP clearly serves valid penological interests of rehabilitation and that the requirements of an inmate choosing between participation in the program or risking significant reduction in his employment or income does not violate a prisoner's constitutional rights. *See United States v. Williams*, 996 F.2d 231, 234 (10th Cir. 1993) (restitution orders may be satisfied through IFRP); *Montano-Figuero v. Crabtree*, 162 F.3d 548, 549 (9th Cir. 1998), *cert. denied*, 119 S.Ct. 1505 (1999) (IFRP requiring inmate to pay court-imposed fines not unconstitutional); *Muhamad v. Moore*, 760 F. Supp 869, 871 (D. Kan. 1991) (IFRP requirements do not violate constitutional rights); *James v. Quinlan*, 866 F.2d 627, 630 (3rd Cir.), *cert. denied*, 493 U.S. 870 (1989); *Prows v. Department of Justice*, 938 F.2d 274 (D.C. Cir. 1991); *Dorman v. Thornburgh*, 955 F.2 57 (D.C. Cir. 1992) (rejecting both the due process and excessive punishment claims of a prisoner who was removed from his work assignment because he refused to participate in the IFRP); *Solis v. Menifee*, 2000 WL 1401633 (S.D. N.Y. 2000) (Only Westlaw citation currently available) (where prisoner raised due process and argued that IFRP participation was coercive and involuntary, the district court disagreed, holding that where the sentencing court imposed a fine and elected not to establish scheduled payments, it delegated none of its functions and powers, and it was therefore within the BOP's discretion to decide that a prisoner who refused participation in the IFRP was not a good candidate for certain

privileges or rehabilitation programs).[3]

This Court agrees with the reasoning of these cases and finds them applicable to the instant § 2241 petition. A prisoner's refusal to participate in the IFRP or his noncompliance with a financial plan can result in the denial of various privileges and incentives. 28 C.F.R. §545.11(d). The Court dismisses the instant § 2241 petition with prejudice for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(ii).

## CONCLUSION

Accordingly**, IT IS ORDERED** as follows:

(1)     This action is **DISMISSED WITH PREJUDICE** from the docket of the Court.

(2)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This April 23, 2009.



Signed By:
Henry R Wilhoit Jr.
United States District Judge

---

[3]

The district court stated as follows:

"Consequently, though Mr. Solis faces the loss of some privileges should he forego participation in the IFRP, those consequences do not fall under the scope of this Court's review pursuant to 28. U. C. §2241. *See, e.g., Santiago v. Superintendent of the Ossing Correctional Facility*, 2000 WL 1277306 (S.D. N.Y. July 21, 2000) ("In conducting Habeas Review, a federal judge is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (Citing 28 U.S.C. § 2241, and *Rose v. Hodges*, 423 U.S. 19, 21 (1975)."

*Solis*, at *2.